Hillsborough, } No. 3661.
July 2, 1947. }

CURTIS INN v. ALFRED PRATTE, JR.

*Thorp & Branch* and *Myer Saidel* (*Mr. Branch* orally), for the plaintiff.

*Ernest R. D'Amours* (by brief and orally), for the defendant.

JOHNSTON, J. The defendant relies for his right to possession on a certain lease of the said premises executed December 21, 1944, for a term of five years from February 1, 1945. The parties were himself as lessee and Charles H. Barnard, trustee for Margaret M. Curtis Vreeland, as lessor.

By virtue of the wills of her grandmother and of her mother, Margaret M. Curtis Vreeland was life tenant of the above mentioned premises known as the Curtis Inn property. She was born January 23, 1881, and was childless. Upon her death 7/18 of the property would have descended to the representatives of her grandmother's deceased brothers and sisters living at the time of the life tenant's decease, and 11/18 would have descended to Virginia V. (Hart) Horner, who has two children now living, both minors.

The lease contained the following provision: "The lessor reserves unto himself the right to terminate and cancel this lease upon thirty days' written notice to the lessee if at any time during the term of this lease the property be sold by the lessor." Notice of termination purporting to be under this provision was given the defendant March 1, 1946, by Charles H. Barnard, trustee.

January 23, 1946, the life tenant and all remaindermen that were *sui juris* joined in filing a petition for partition of the Curtis Inn property under the provisions of chapter 410 of the Revised Laws. A guardian *ad litem* was appointed by the court to represent any unborn issue of the life tenant as well as any minors and any unborn or unknown representatives of the deceased brothers and sisters of the grandmother.

The petition recited that subject to the approval of the court, "your petitioners have received and accepted an offer of Sixty Thousand Dollars ($60,000) for the real estate described in this petition, known as the Curtis Inn, and a down payment of Fifteen Hundred Dollars ($1500) has been made."

March 8, 1946, "it appearing that all parties thereto consent to the granting of the prayer thereof and to the entry of this decree," the court decreed that the real estate be sold in accordance with the prayer and that the accepted offer be approved. It was provided in the decree that the deed from the commissioner should be made subject to any leases between any tenant and the trustees of the Margaret C. Vreeland trust estate.

The new owners gave the defendant a notice to quit dated March 27, 1946, to take effect May 1, 1946.

The defendant claims that the partition proceeding is without effect so far as he is concerned because he was not made a party. This is not correct. The petitioners at their election may or may not make a tenant for years a party. "And the petitioner may, at his election, make a tenant for life or for years, . . . a petitionee in the action." R. L., c. 410, s. 1. In the present case the decree of the court was that the deed of the commissioner be made subject to the lease of the defendant.

The partition prayed for and decreed was among remaindermen and accordingly does not offend the principle of *Brierley* v. *Brierley*, 81 N. H. 133, 134, that the statute "contemplated only partition as between those holding with others estates of the same class or duration." The sale made was not under the authority of R. L., c. 259, s. 28, as suggested by the defendant.

The sole main question is whether the property was sold by the lessor within the meaning of the lease providing for termination by him. The defendant expressly states that he does not question the *bona fides* of the sale. Nor is there any occasion to discriminate between agreements for sale and executed sales. "An agreement of sale as distinguished from a consummated sale has been held, in a number of cases, to fulfil the clause of a lease providing for its termination on a sale of the property." 35 A. L. R. 538. This authority cites cases from nine jurisdictions in support of this statement.

It is argued that this was not a sale by the lessor within the meaning of the lease because the estate of the lessor was a life tenancy only, whereas the sale was of the entire fee. The lease is to be construed reasonably. It is well known that there is little market for life in-

terests in real estate. More can be obtained for such an interest when it and the other estates making up the fee are sold in one transaction. A reasonable construction of the part under consideration permitted a sale by the lessor with those who held the other estates that comprised the fee. The transfer of the life tenancy was none the less a sale because the owners of other interests joined in the transaction of transferring the fee.

Because the sale agreed upon by the life tenant and others was effected by means of a commissioner's sale in partition proceedings, the defendant says that it was not voluntary and not within the meaning of the lease provision. It has not always been found necessary that a transfer be strictly voluntary in order that a lease be terminated in case of a sale. "A transfer of the landlord's interest by operation of law, as by sale under a judgment, or the vesting of the property in a trustee in bankruptcy, has the same effect as a voluntary conveyance in terminating the tenancy." 1 Tiffany, Landlord and Tenant 116.

Insofar as the decree of the court was obligatory upon remainder interests of minors, unknown persons and unborn heirs, the defendant cannot complain. He derived no rights from them. His lease was from the life tenant only and would have been terminated by her decease. "In the absence of the power, of course the lease in each instance terminated with the life estate, since the lessor had no power to 'create an estate extending beyond the measure of his own estate.' Tiffany, Real Property (3d *ed.*) s. 62." *McLane* v. *Silver Brothers*, 92 N. H. 368, 371.

The sale by the lessor of the life tenancy in the premises described was entirely voluntary. "The phrase 'forced sale' [within the meaning of the constitution and the statutes passed pursuant thereto protecting homesteads from forced sales] does not apply where the owner consents directly to the sale, or does so indirectly by consenting to, or doing those acts or things that necessarily or usually eventuate in a sale, as, for instance, a sale under a power contained in a mortgage or a decree of foreclosure. When the owner of property consents to a sale under the execution or other legal process, the sale is not forced, but it is as voluntary, within the full import of the term, as it is when he directly effects the sale and executes the conveyance." *White* v. *Rosenthal*, 140 Cal. App. 184, 186, 187. In the present case the owner of the life tenancy with the owners of other interests in the fee entered into a binding agreement with the purchasers of the premises subject to the approval of the court, petitioned for partition

and finally consented to the decree of the court ordering a sale of the premises. This was a voluntary sale on the part of those who so petitioned and so consented.

The means used by the lessor to accomplish a sale of the lease-hold was a sale by him within the meaning of the lease, although he did not execute the deed of conveyance.

*Judgment for the plaintiff.*

BRANCH, C. J., did not sit: the others concurred.